538 So.2d 1320 (1989)
T.J., a Child Appellant,
v.
STATE of Florida, Appellee.
No. 88-1971.
District Court of Appeal of Florida, Second District.
February 15, 1989.
James Marion Moorman, Public Defender, and Julius J. Aulisio, Asst. Public Defender, Bartow, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and David R. Gemmer, Asst. Atty. Gen., Tampa, for appellee.
ALTENBERND, Judge.
T.J., a juvenile, appeals her adjudication of delinquency. Following an adverse ruling on a dispositive motion to suppress, she reserved the right to appeal and pleaded nolo contendere to felony possession of cocaine. The cocaine had been unexpectedly discovered in her purse by a school official conducting an extensive search for a knife. Recognizing the seriousness of the drug problem which confronts our public schools, we reluctantly reverse the trial court and direct that the evidence of cocaine be suppressed.
*1321 The essential facts establish that the appellant was a fifteen-year-old student attending eighth grade at a middle school. She had a school history of minor disciplinary problems, but no prior history of problems relating either to drugs or weapons.
On the day preceding her search, T.J. had been involved as a spectator at a fight between two other female students which occurred at a school bus stop. During the fight, one student pulled a knife and threatened the other. The fight at the bus stop ended without a stabbing. The victimized student, however, was told that the knife would be brought to school in the morning and that the fight would continue.
The following morning, the victimized student reported her fears to a school disciplinary supervisor. She believed that either the girl who had fought with her or T.J. would have the knife.[1] The school disciplinary supervisor reported the student's problem to an assistant principal.
The assistant principal decided to search both girls. The search of the girl who had had the knife the prior evening did not produce a weapon. When T.J. was searched, the assistant principal opened her purse. The assistant principal did not see a knife or any other weapon. She took everything out of the purse and still did not locate a weapon. There was a small zippered side pocket inside the purse. The assistant principal did not see any bulges in this side pocket. When she placed her hand inside the side pocket, she felt only a plastic bag. She did not think that the plastic bag contained a weapon. Nevertheless, she removed the plastic bag and, ultimately, concluded that it contained a few pieces of "rock cocaine."
A search of a student by school officials at a public school is governed by the Fourth Amendment. New Jersey v. T.L.O., 469 U.S. 325, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985). Such a search, however, does not require "probable cause." Instead, the Supreme Court has announced a reasonable suspicion test which involves a "two-fold inquiry":
[F]irst, one must consider `whether the ... action was justified at its inception,' Terry v. Ohio, 392 U.S. [1], at 20, 88 S.Ct. [1868], at 1879 [20 L.Ed.2d 889]; second, one must determine whether the search as actually conducted `was reasonably related in scope to the circumstances which justified the interference in the first place,' ibid.

T.L.O., 469 U.S. at 341, 105 S.Ct. at 742-743.
In determining whether a search is "justified at its inception," this court has utilized factors suggested in State v. D.T.W., 425 So.2d 1383 (Fla. 1st DCA 1983). A.B. v. State, 440 So.2d 500 (Fla. 2d DCA 1983). These factors attempt to balance the child's interest in privacy with the school's interest in maintaining discipline and assuring the safety of other students. As the Supreme Court correctly notes:
"Maintaining order in the classroom has never been easy, but in recent years, school disorder has taken particularly ugly forms: drug use and violent crime in the schools have become major social problems."
T.L.O., 469 U.S. at 339, 105 S.Ct. at 741.
In this state, school boards have potential civil liability if school officials fail to take reasonable steps to protect students from assaults by other students. Comuntzis v. Pinellas County School Board, 508 So.2d 750 (Fla. 2d DCA 1987); Brantly v. Dade County School Board, 493 So.2d 471 (Fla. 3d DCA 1986). When student safety is an issue, the reasonableness of a search should weigh heavily in favor of the school official.
Assuming, without deciding, that this search was justified at its inception, the scope of the search exceeds that which is "reasonably related ... to the circumstances which justify the interference in the first place." T.L.O., 469 U.S. at 341, 105 S.Ct. *1322 at 743.[2] While school safety may readily justify a basic search for weapons, the student's interest in privacy should preclude a scavenger hunt after the basic search has produced no weapons. In this case, we hold that the search exceeded the scope permitted by the Fourth Amendment when the school official examined the plastic bag in a side pocket which clearly contained no weapon.
This is not a case in which the drugs were immediately visible during the initial phase of the search. See R.D.L. v. State, 499 So.2d 31 (Fla. 2d DCA 1986). Likewise, this is not a case in which reasonable suspicion for a drug search developed during the search for a weapon. T.L.O. These drugs were discovered during a search extended by simple curiosity rather than suspicion.
The scope of a school search for a weapon should be similar to the search permitted for a weapon pursuant to a "stop and frisk" under Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). This court and other Florida courts have repeatedly suppressed evidence of drugs when a police officer's valid search for weapons discovers drugs in a purse or pocket after the officer has concluded that the purse or pocket does not contain a weapon. Raleigh v. State, 404 So.2d 1163 (Fla. 2d DCA 1981); Baldwin v. State, 418 So.2d 1219 (Fla. 2d DCA 1982); White v. State, 458 So.2d 1150 (Fla. 1st DCA 1984); State v. Gary, 466 So.2d 1199 (Fla. 3d DCA 1985).
Accordingly, we reverse the adjudication of delinquency.[3]
RYDER, A.C.J., and FRANK, J., concur.
NOTES
[1] Apparently, this belief was based upon a friendship between T.J. and the girl with the knife. The record, however, does not clearly explain why the victimized student believed the knife would be in T.J.'s purse.
[2] We recognize that this court has held a similar search to be unreasonable. A.B. v. State, 440 So.2d 500 (Fla. 2d DCA 1983). In that case, however, student safety was not a primary factor and the purse was believed to contain "something" rather than a knife.
[3] In this case we are not called upon to determine the more difficult question of whether this evidence would be excluded in a school disciplinary proceeding. See Bach, The Exclusionary Rule in the Public School Administrative Disciplinary Proceeding: Answering the Question After New Jersey v. T.L.O., Hastings L.J. 1133 (1986).