DAMOORGIAN, J.
Appellant entered a plea of guilty to burglary of a dwelling and grand theft from a dwelling after the trial court denied his dispositive motion to suppress. He appeals the denial of his motion to suppress, arguing that (i) the initial stop was neither consensual nor supported by reasonable suspicion; (ii) the pat-down was unlawful because the officer did not have any reasonable suspicion to believe Appellant was armed; (iii) the pat-down was not authorized by consent; and (iv) even if the pat-down was permissible, the search of *457 Appellant’s pockets and pants exceeded its scope. Finding merit to Appellant’s second, third, and fourth arguments, we reverse for the reasons discussed herein.
By way of background, before entering a plea of guilty, Appellant moved to suppress all evidence found on him arguing that it was seized in violation of Florida’s Stop and Frisk Law[1] and the Fourth Amendment to the United States Constitution.
At the hearing on Appellant’s motion, the only witness to testify was the officer who seized property from Appellant’s person. The officer had extensive law enforcement training and experience in street crimes. He testified that he had seen Appellant two or three times before the date of his arrest hanging around a middle school with his friends. He knew Appellant had a past criminal history that involved resisting arrest and stealing.
On the date of Appellant’s arrest, the officer responded to a radio dispatch report of a burglary, which had just occurred. It was announced over the radio that a suspect fled into a neighboring development. The officer did not have a description of the suspect or the stolen property. The officer proceeded into the development in his unmarked patrol vehicle. As he pulled into the development, he saw a white male wearing a “very large extra long white shirt and black pants, speed walking southbound.” The individual, later identified as Appellant, was walking briskly toward the back of a home. The officer pulled up behind him and exited his vehicle. He was accompanied by his partner, who also exited the vehicle. He was wearing his street crimes uniform, which has the word “police” written across the chest. When the officer identified himself, Appellant stopped and turned around, whereupon the officer recognized him.
The officer described Appellant’s demeanor as being “very scared.” Appellant was also “breathing very heavily” and “sweating,” and the officer noticed that his “eyes got really wide.” The officer further observed that Appellant’s pants were tucked into his socks with bulges sticking out, “as if he were trying to conceal something.” When Appellant was asked to “come here,” he did. When the officer asked him what he was doing in that area, he responded that he was playing a game of tag with his friend. Appellant did not respond to the officer’s questions regarding the whereabouts of his friend and why he was in that particular development. The officer knew Appellant did not live in that neighborhood.
The officer secured Appellant in handcuffs in order to ensure that Appellant would not attempt to run away. Appellant then agreed to a pat-down search. During the pat-down, the officer testified that he felt several large objects on the pant legs sticking out and a large bump on his back pocket, which the officer knew were not weapons, but he had “a feeling” that the items were property. Nevertheless, he reached into Appellant’s pants and removed a camera, two iPods, a watch, and U.S. currency. The items were located either in Appellant’s back pocket or tucked into his pant legs.
The standard of review applicable to a motion to suppress requires an appellate court to defer to the trial court’s factual findings but review legal conclusions de novo. State v. Abbey, 28 So.3d 208, 210 (Fla. 4th DCA 2010). We conclude, without discussion, that the officer had reasonable suspicion to detain Appellant. See Terry v. Ohio, 392 U.S. 1, 21-22, *458 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); Popple v. State, 626 So.2d 185, 186 (Fla.1993) (explaining that investigatory stops under Terry are permissible where an officer has a well-founded, articulable suspicion of criminal activity); § 901.151(2), Fla. Stat. (2009) (codifying the standards enunciated in Terry in Florida’s Stop and Frisk Law).
Given our conclusion regarding the stop, the question becomes whether the officer’s weapons pat-down was permissible. Following a stop, “police officers are authorized to execute a pat-down for weapons only where they have a reasonable suspicion to believe that a suspect is armed with a dangerous weapon.” Campuzano v. State, 771 So.2d 1238, 1243 (Fla. 4th DCA 2000); see also § 901.151(5), Fla. Stat. (2009) (articulating the standard for an officer’s search of a person based on his or her belief that the person is armed with a dangerous weapon); Johnson v. State, 785 So.2d 1224, 1226 (Fla. 4th DCA 2001) (stating that “a pat down is authorized when ... the officer has probable cause to believe that the person stopped is armed with a dangerous weapon”).[2] This Court has stated that “[o]ne of the recognized circumstances justifying a weapons pat-down is the combination of the defendant’s nervousness and the officer’s observation of a bulge in the defendant’s clothing.” Ray v. State, 849 So.2d 1222, 1225 (Fla. 4th DCA 2003); see also C.D. v. State, 82 So.3d 1037 (Fla. 4th DCA 2011).
In cases where an officer conducted a weapons pat-down after observing a bulge on a suspect’s clothing, the officer testified that before the pat-down he or she suspected that the bulging object could be a weapon. See, e.g., Graham v. State, 495 So.2d 852, 854 (Fla. 4th DCA 1986) (affirming the trial court’s denial of defendant’s motion to suppress and noting that the officer was permitted to conduct a pat-down for weapons after he noticed a bulge in defendant’s pants which he feared was a weapon); R.R. v. State, 715 So.2d 1062, 1063 (Fla. 5th DCA 1998); Richardson v. State, 599 So.2d 703, 704-05 (Fla. 1st DCA 1992).
While there was testimony concerning the bulges in Appellant’s pants and his “scared” demeanor, the officer did not provide testimony indicating that he had any suspicion or feared that Appellant was armed with a dangerous weapon. The officer merely testified that Appellant had a history of resisting and being rude. We hold that the facts in the instant case are insufficient to establish that the officer had a reasonable suspicion that Appellant was armed with a dangerous weapon, which would have allowed him to conduct a pat-down search.
Furthermore, Appellant argues and we agree that Appellant’s consent to the pat-down was insufficient. Where the officer handcuffed Appellant before asking “permission” to pat him down, we conclude that the consent given was nothing more than acquiescence to a show of police authority. See Ray, 849 So.2d at 1225 (“When the validity of a search rests on consent, the State has the burden of proving that the necessary consent was obtained and that it was freely and voluntarily given, a burden that is not satisfied by showing a mere submission to a claim of lawful authority.”) (quoting State v. Iaccarino, 767 So.2d 470, 476 (Fla. 2d DCA 2000)). As such, the weapons pat-down was not justified.
*459 Even assuming the officer’s pat-down was permissible, a stop and frisk may not extend beyond a pat-down of a suspect’s outer clothing unless the officer concludes that the suspect has a weapon. C.G. v. State, 689 So.2d 1246, 1248 (Fla. 4th DCA 1997); see also Doctor v. State, 596 So.2d 442, 444-45 (Fla.1992) (“[D]uring the course of a legitimate frisk for weapons, police may only seize weapons or objects which reasonably could be weapons, despite the fact that the officer may reasonably suspect that the object may be evidence of a crime.”). Here, the officer testified that based on the pat-down, he knew the objects in Appellant’s pants were not weapons, but were instead property. Accordingly, the officer was not authorized to seize the contraband found on Appellant under the guise of Terry.
Appellant next argues that even if the pat-down was lawful, the evidence presented by the State at the suppression hearing was insufficient to establish probable cause to justify seizure of the contraband. The State counters that the officer had probable cause to seize the contraband found on Appellant, relying on what the officer felt during the pat-down and the other circumstances present. See State v. J.D., 796 So.2d 1217, 1219 (Fla. 4th DCA 2001) (“If, during a lawful pat-down ... the officer [develops] probable cause to believe that the defendant is carrying contraband, the officer may seize the contraband.”).
“Probable cause to arrest or search exists when the totality of the facts and circumstances within an officer’s knowledge sufficiently warrant a reasonable person to believe that, more likely than not, a crime has been committed.” League v. State, 778 So.2d 1086, 1087 (Fla. 4th DCA 2001) (citation omitted). Probable cause does not develop anytime an officer feels an object that the officer reasonably suspects to be contraband. See Harris v. State, 790 So.2d 1246, 1249 (Fla. 5th DCA 2001) (seizure of film canister containing cocaine from defendant’s front pocket not justified by plain feel doctrine where officer had nothing but mere suspicion that object he felt was contraband); Cole v. State, 727 So.2d 280, 281 (Fla. 2d DCA 1999) (seizure of crack pipe from defendant’s pants during pat-down search exceeded scope of the weapons pat-down where officer never testified that it was immediately apparent to him upon feeling the pipe that it was contraband). However, we acknowledge that “[a] police officer does not have to ‘know’ that a certain item is contraband” in order to establish probable cause, and “[a] finding of probable cause does not require absolute certitude.” State v. Hafer, 773 So.2d 1223, 1225 (Fla. 4th DCA 2000); Curtis v. State, 748 So.2d 370, 374 (Fla. 4th DCA 2000). Nonetheless, “[p]robable cause must be based on facts known to exist.” Doctor, 596 So.2d at 445 (citation omitted).
Considering the record before us, it is significant that before the pat-down occurred the officer had no description of the suspect or any items that may have been stolen during the burglary. Moreover, nothing transpired during the pat-down to authorize a more extensive search on the basis of probable cause. Here, all that was revealed from the pat-down was the officer’s “feeling” that the items were property. Notably, the officer did not even testify that he believed the items were contraband, only that he knew the items were property. Regardless, this feeling was insufficient to legitimize the seizure. See id.; Rodriguez v. State, 807 So.2d 130, 131 (Fla. 2d DCA 2002) (“The State has the burden of proving that the officer had the requisite probable cause. It must present more evidence than just the officer’s statement he had a ‘feeling’ based on ‘experience’ that the object he *460 felt was contraband.”) (citation omitted). Therefore, we conclude that the officer’s testimony did not demonstrate probable cause.
Based on the foregoing, the trial court erred in denying Appellant’s motion to suppress.

Reversed and remanded.

WARNER and CONNER, JJ., concur.

. § 901.151, Fla. Stat. (2009).

. The Florida Supreme Court has indicated that the meaning of "probable cause” in section 901.151(5), is not synonymous with the stricter probable cause standard used to evaluate the legality of a search warrant or an arrest, but instead means reasonable belief or suspicion. State v. Webb, 398 So.2d 820, 824-25 (Fla.1981).